## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| LOUIS GREGORY PELLEGRINO, | |
| Plaintiff, | |
| vs. | CIV. ACTION NO._____ |
| 12-BRAY, LLC, and DWIGHT DAVID HOWARD, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## **COMPLAINT FOR DAMAGES**

COMES NOW Plaintiff Louis Gregory Pellegrino, by and through the undersigned Counsel of Record, and hereby files this Complaint for Damages against Defendants 12-Bray and Dwight David Howard (*collectively*, "Defendants"), respectfully showing the Court as follows:

# I.  JURISDICTION AND VENUE

### 1.

Plaintiff brings the above-captioned case pursuant to (a) 29 U.S.C. §§ 201, *et seq.,* the Fair Labor Standards Act of 1938, as amended, ("FLSA") for unpaid minimum/overtime wages and retaliation, as well as (b) the laws of the State of Georgia for breach of contract, *quantum meruit*, unjust enrichment, defamation, litigation expenses, and punitive damages.

### 2.

The United States District Court for the Northern District of Georgia ("Court") is vested with original jurisdiction pursuant to 28 U.S.C. § 1331 because the above-captioned complaint involves the laws of the United States and with supplemental jurisdiction pursuant to 28 U.S.C. § 1367 because the State law claims arise from the same nucleus of operative facts as the Federal law claims.

### 3.

Venue is proper pursuant to 28 U.S.C. § 1391 because Defendants reside and/or maintain a place of business in the Northern District of Georgia, Atlanta Division, and the unlawful conduct forming the basis of the above-captioned complaint occurred in the Northern District of Georgia, Atlanta Division.

## II. PARTIES

4.

Plaintiff Louis Gregory Pellegrino ("Pellegrino") is a thirty-eight (38) year male, who is a citizen of the United States, resident of the State of Georgia, subject to this Court's jurisdiction, and entitled to bring the claims asserted in the above-captioned case.

5.

At all relevant times, Pellegrino was an "employee" of Defendants 12-Bray, LLC, and Dwight David Howard within the meaning of, among other laws, the FLSA, 29 U.S.C. § 203.

6.

Defendant 12-Bray, LLC ("12-Bray") is a Texas limited liability company affecting inter-State commerce through facilities across the United States and subject to the Court's jurisdiction with a principle office located in Minneapolis, Minnesota.

7.

12-Bray operates an office located at 7778 McGinnis Ferry Road, Suite 287, Suwanee, Georgia 30024 and a corporate headquarters located at 1224 Hammond Drive, Suite 1500, Atlanta, Georgia.

8.

12-Bray operates and/or possesses a residential estate located at 5200 Moore Road, Suwanee, Georgia 30024-1934 ("Estate").

9.

12-Bray is an "employer" with the meaning of, among other laws, the FLSA, 29 U.S.C. § 203(d).

10.

12-Bray is covered by the FLSA because 12-Bray employs individuals, engaged in inter-State commerce and/or the production of goods for inter-State commerce, with annual gross sales and/or business volume of at least $500,000.00.

11.

12-Bray may be served with process through eResidentAgent, Inc., located at 900 Old Roswell Lakes Parkway, Suite 310, Roswell, Georgia 30076.

12.

Defendant Dwight David Howard ("Howard")—African-American male—is and was, at all relevant times, a citizen of the United States, resident of the State of Georgia, and subject to the jurisdiction of this Court.

13.

Howard is and was, at all relevant times, 12-Bray's owner and operator, involved in the day-to-day operation of 12-Bray and regularly exercised authority to: (a) hire and terminate employees, (b) determine the schedules and assignments for employees, (c) supervise employees, and (d) otherwise control operation of 12-Bray.

14.

At all relevant times, Howard supervised Pellegrino and participated in the unlawful and tortious conduct described herein.

15.

Howard may be served with process at Howard's residence at the Estate.

16.

During the course of Pellegrino's employment, Defendants 12-Bray and Howard *jointly* supervised and managed Pellegrino, determined Pellegrino's rate and method of compensation, exercised authority to hire and terminate Pellegrino's employment, prepared Pellegrino's payroll and schedule, invested in Pellegrino's equipment, determined Pellegrino's permanence and exclusiveness, as well as otherwise controlled the terms and conditions of Pellegrino's employment.

### III.  FACTUAL ALLEGATIONS

17.

12-Bray possesses, manages, and operates Howard's personal residences (including the Estate), personal properties, businesses, and employees in several States, Howard's personal property.  For example, at the Estate, Howard employs maids, housekeepers, landscapers, gardeners, nannies, cooks, butlers, and security personnel—none of the individuals filling these positions exercised any discretion or independent judgment with respect to their respective duties or responsibilities often personally assigned by Howard and/or Howard's representatives.  However, 12-Bray has no corporate policies, procedures, and/or rules.  12-Bray merely exists to satisfy Howard's personal needs and desires.

18.

12-Bray and Howard have a history of failing and/or refusing to compensate employees, including, but not limited to, Armica Nabaa and Kamisha Shelman, at the FLSA-mandated rates.

19.

Pellegrino is a thirty-eight (38) year old male.

20.

Following high school, Pellegrino obtained a Bachelor's Degree in Psychology and Associate's Degree in Criminal Justice from the University of Phoenix.

21.

After completing education, Pellegrino served in several professional positions, including, but not limited to, Property Manager and Home Inspector with Handy Hands, LLC, Foreman with Kemron, as well as Project Manager and Field Chemist with Chemical Detection Services.

22.

From 2017 until 2020, Pellegrino served as Foreman and Project Manager, earning $30.00 per hour for Environmental Restoration Services, an emergency response company for hazardous material spills and environmental disasters.

23.

After the birth of Pellegrino's child, Pellegrino could no longer perform for Environmental Restoration Services, which required Pellegrino to be on-call 24 hours, 7 days per week. Because Pellegrino's mother had previously worked for 12-Bray and Howard as a nanny and live-in assistant, Pellegrino was advised that Defendants were filling a position at the Estate. Following several communications

between Pellegrino and Howard concerning the position at the Estate, Pellegrino resigned from his position with Environmental Restoration Services.

24.

Pursuant to the agreement between Pellegrino and Howard, on or about January 24, 2020, Pellegrino began working at the Estate. When Pellegrino was hired, there was no butler or security employed at the Estate, so Pellegrino was tasked with providing butler/concierge, security, shopping, car/property maintenance, shipping, pet-care, and pool duties, as well as other personal duties and assignments from Howard and Estate guests. For example, Howard often tasked Pellegrino with menial tasks, including, but not limited to, setting up video game systems, preparing meals, serving tea, printing documents, retrieving food for guests, transporting guests to-and-from the Estate, and showing Howard how to utilize electronics at the Estate. In exchange for Pellegrino's butler/concierge services, Howard and 12-Bray agreed to compensate Pellegrino at the rate of $750.00 per week during any probationary period and, at the conclusion of the probationary period, Howard and 12-Bray would compensate Pellegrino at the rate of $80,000.00 annually.

25.

During the course of employment with 12-Bray and Howard, Pellegrino diligently and professionally performed all duties and assigned tasks. As such, Howard routinely praised Pellegrino for excellent professional performance and being a "jack-of-all-trade"—referring to the multitude of butler/concierge services Pellegrino provided at the Estate. Moreover, Estate contractors and co-workers often declared that Pellegrino was the best employee at the Estate.

26.

Due to the overwhelming responsibilities, Pellegrino was required to reside at the Estate, where Pellegrino was tasked with around-the-clock butler/concierge duties for Howard and Estate guests. As such, Pellegrino was forced to remain at the Estate 24 hours, 7 days per week, except when Pellegrino left the Estate to perform other duties for 12-Bray and Howard, including, but not limited to, shopping, car maintenance, and/or shipping items for Howard. Therefore, Pellegrino worked approximately 20 hours per day and 140 hours per week.

27.

Despite Pellegrino's diligent and loyal performance, Defendants refused to compensate Pellegrino at the agreed-upon annual salary and/or FLSA-mandated rates. As such, Pellegrino repeatedly complained to Howard, and other 12-Bray

employees, about the failure and/or refusal to compensate Pellegrino at the agreed-upon annual salary and/or FLSA-mandated rates.  Often, Howard responded that Pellegrino would be paid as promised once Howard changed banks and accountants. However, Howard and 12-Bray never compensated Pellegrino at the agreed-upon annual salary and/or FLSA-mandated rates.

28.

Likewise, despite Pellegrino's diligent, competent, and uncompensated performance, Howard created a hostile work environment while defaming Pellegrino.  For example, when Howard discovered that Pellegrino was friends with the mother of one of his children, Mellissa Rios, Howard began telling Estate guests and co-workers to watch-out for, and not trust, Pellegrino.  Likewise, Howard began spreading false, negative information about Pellegrino's character to Estate guests and co-workers.  For example, Howard routinely told people that Pellegrino was untrustworthy and a thief.   Moreover, Howard often disclosed information concerning Pellegrino's private personal relationships.  However, Howard never raised any performance or trust issues with Pellegrino, but rather, Howard discussed potential issues with Estate guests and co-workers.

29.

Moreover, following an out-of-control late night party, Howard began to target and blame Pellegrino for any and all incidents occurring at the Estate.

30.

During the Covid-19 quarantine, Howard invited Howard's on-again, off-again fiancé, Te'A Cooper ("Cooper"), the mothers of his various children, so-called friends, and other associates to reside at the Estate—approximately 30 people had unfettered access to Estate.

31.

Without cause or justification, Howard falsely accused Pellegrino of theft. When reconciling with Copper in August 2020, Howard instructed Pellegrino to retrieve a $250,000.00 engagement ring from a Rolls Royce Cullinan, Howard's primary vehicle at the Estate, and to take the ring to a jeweler for repair.  Because Pellegrino became familiar with the vehicle when detailing/cleaning it on a daily basis, Pellegrino advised Howard that the ring was not in the console as stated by Howard.  Nevertheless, Pellegrino searched, to no avail, the vehicle for the ring. When Pellegrino confirmed the ring was not in the Cullinan, Howard responded, "I thought it was in there, maybe it's in my room," and instructed Pellegrino to search the Estate for the ring.  For the next week, Pellegrino spent countless hours

searching, to no avail, the Estate for the ring.  Rather than file an insurance claim or police report, Howard began to hold Pellegrino responsible for the missing ring.

32.

Despite the missing engagement ring, Howard continued to entrust Pellegrino with Howard's jewelry at the Estate, including, but not limited to, obtaining a replacement engagement ring worth approximately $90,000.00, repairing a Rolex watch for Howard's mother, and managing other jewelry worth approximately $1,500,000.00.

33.

Faced with Howard's and 12-Bray's refusal to compensate at the agreed-upon annual salary, Pellegrino then complained to Howard's assistant, Joyce Larkin ("Larkin"), about unpaid wages.  In response, Larkin advised Pellegrino that Howard would not pay Pellegrino at the agreed-upon annual salary.  Moreover, Larkin threatened that, if Pellegrino continued to complain about unpaid wages, it would be "detrimental" to Pellegrino.  As such, Pellegrino decided to wait until Howard returned to Atlanta to discuss the unpaid wages in person.  Nevertheless, Pellegrino continued to provide diligent and professional butler/concierge services at the Estate.

34.

On or about January 26, 2022, Howard simply stated that Pellegrino's services were "no longer needed"—Howard terminated, effective immediately, Pellegrino's employment without cause or justification.

35.

Because Howard's mother, Sheryl Howard, begged Howard not to terminate Pellegrino's employment based upon Pellegrino's stellar character and professional performance, Howard continued to make false and defamatory allegations to other Estate employees/guests and mutual friends to justify the termination of Pellegrino's employment.   For example, Howard continued to falsely accuse Pellegrino of stealing the engagement ring.   Moreover, Howard falsely accused Pellegrino of engaging in a secret relationship with Cooper.

36.

Following the termination of Pellegrino's employment, Pellegrino sent a letter to Howard's attorney, Paul Howard, requesting compensation for unpaid wages.   In response, Paul Howard stated that, once Pellegrino returned documents and information, the unpaid wages would be resolved.   However, when Pellegrino returned the requested documents and information, Paul Howard refused to communicate with Pellegrino.

37.

Despite Pellegrino's repeated requests, Defendants failed and/or refused to compensate for certain hours worked at the agreed-upon annual salary or FLSA-mandated rates.

38.

While Pellegrino provided butler/concierge services at the Estate pursuant to the parties' agreement, Defendants required, and were aware that, Pellegrino worked more than 140 hours per workweek without compensation at the agreed-upon annual salary and/or FLSA-mandated rates.

39.

Rather than compensate Pellegrino at the agreed-upon annual salary and/or the FLSA-mandated rates for hours worked in each workweek, regardless of the number of hours worked each workweek, Defendants paid Pellegrino $750.00 per workweek.  Based upon the 140 hours per workweek, Defendants only paid Pellegrino approximately $5.36 per hour.  Moreover, Defendants never compensated Pellegrino at the FLSA-mandated rate (time-and-a-half) for hours worked in excess of 40 hours per workweek.

40.

Defendants' failure to properly compensate Pellegrino at the agreed-upon annual salary and/or FLSA-mandated rates was knowing and willful.

41.

Defendants terminated Pellegrino's employment and punished Pellegrino immediately after Pellegrino had the audacity to complain about unpaid wages, breach of contract, and harassment at the hands of Defendants.

42.

As a result of Defendants' unlawful actions, Pellegrino has suffered, among other things, lost wages and benefits, as well as severe emotional distress.

## IV.  CLAIMS FOR RELIEF

### COUNT I:
### FAILURE TO PAY MINIMUM WAGES
### IN VIOLATION OF FLSA
**(Against Defendant 12-Bray and Howard)**

43.

The FLSA requires employers to pay employees a minimum wage, plus any expenses the employee incurs for the benefit of the employer.

44.

At all relevant times, the relationships between Pellegrino, 12-Bray, and Howard were employer-employee relationships within the meaning of the FLSA, such that causes of action exist where 12-Bray and Howard failed to pay minimum wages to Pellegrino during the course of Pellegrino's employment.

45.

Beginning on or about January 24, 2020, Pellegrino began providing professional butler/concierge services to 12-Bray and Howard at the Estate, where Defendants agreed to pay Pellegrino at the rate of $750.00 per week (approximately $5.36 per hour) for a probationary period before paying Pellegrino $80,000.00 annually.

46.

Although Pellegrino worked approximately twenty (20) hours on a daily basis, 12-Bray and Howard paid Pellegrino a flat $750.00 per week (approximately $5.36 per hour).

47.

12-Bray and Howard repeatedly failed to pay Pellegrino minimum wages for certain hours working as a butler/concierge at the Estate in violation of the FLSA.

48.

12-Bray's and Howard's actions, policies, practices, and/or procedures violated the FLSA's minimum wage requirement because Defendants permitted Pellegrino to work during certain periods without paying minimum wages.

49.

Under any interpretation of the terms and/or provisions 12-Bray's and Howard's conduct in violation of the FLSA was both willful and in bad faith.

50.

As a result of 12-Bray's and Howard's intentional and willful unlawful acts when refusing to pay Pellegrino minimum for hours working as a butler/concierge at the Estate, Pellegrino suffered damages in addition to incurring reasonable attorney's fees and litigation expenses.

51.

Pursuant to the FLSA, Pellegrino therefor seeks to recover unpaid minimum wages, liquidated damages in an amount equal thereto, as well as the reasonable attorney's fees and litigation expenses associated with the above-captioned case.

## COUNT II:
## FAILURE TO PAY OVERTIME WAGES
## IN VIOLATION OF THE FLSA
### (Against Defendants 12-Bray and Howard)

52.

The FLSA requires, with certain exceptions that are inapplicable to the above-captioned case, that employers pay employees time and a half for hours an employee works in excess of a 40-hour workweek.

53.

During the relevant period, Pellegrino was an employee, within the meaning of the FLSA, of 12-Bray and Howard, who are employers and covered by the FLSA.

54.

During the relevant period, the relationship between Pellegrino, Howard, and 12-Bray was an employer-employee relationship within the meaning of the FLSA, such that a cause of action exists based upon the failure to pay FLSA-mandated rates for hours worked in excess of forty (40) hours during workweeks.

55.

On or about January 24, 2020, Pellegrino began working on behalf of 12-Bray and Howard at the Estate, where Pellegrino provided butler/concierge services and Defendants agreed to pay Pellegrino at the rate of $750.00 per week for a probationary period before paying Pellegrino $80,000.00 annually.

56.

Although Pellegrino worked approximately twenty (20) hours on a daily basis, 12-Bray and Howard paid Pellegrino $750.00 per week (approximately $5.36 per hour).

57.

During the relevant time period, Pellegrino regularly worked more than forty (40) hours per workweek (often upwards of 140 hours per workweek) and, therefore, Pellegrino was entitled to be paid one-and one-half times the regular rate of pay for all hours worked over forty (40) hours in the applicable workweeks.

58.

However, during the course of Pellegrino's employment, 12-Bray and Howard routinely and consistently failed to compensate Pellegrino at the FLSA-mandated rate for the hours worked in excess of forty (40) hours per workweek.

59.

12-Bray and Howard knew, or showed reckless disregard for the fact, that 12-Bray and Howard failed to pay Pellegrino overtime compensation in violation of the FLSA.

60.

12-Bray's and Howard's actions, policies, and/or practices described herein violate the FLSA, 29 U.S.C. § 207, by regularly and repeatedly failing to compensate Pellegrino at the mandated overtime rate.

61.

12-Bray's and Howard's conduct in violation of the FLSA was both willful and in bad faith.

62.

As the direct and proximate result of 12-Bray's and Howard's intentional, willful, and unlawful conduct when refusing to compensate Pellegrino for the overtime hours worked, Pellegrino has suffered loss of income and other damages.

63.

Pursuant to the FLSA, 29 U.S.C. § 216, Pellegrino is entitled to unpaid overtime wages, liquidated damages, and reasonable attorneys' fees, and costs incurred in connection with this claim.

## COUNT III
## RETALIATION
## IN VIOLATION OF THE FLSA
**(Against Defendants 12-Bray and Howard)**

64.

The FLSA prohibits employers from retaliating against an employee who opposes an employment practice prohibited by, or exercises or attempts to exercise rights under, the FLSA.

65.

During the relevant period, the relationship between Pellegrino, 12-Bray, and Howard was an employer-employee relationship within the meaning of the FLSA, which covered 12-Bray and Howard, such that a cause of action exists where retaliation on the basis of opposing and/or reporting unlawful employment practices is alleged to be the causative agent of adverse employment actions directed to Pellegrino by Defendants.

66.

Defendants unlawfully and knowingly failed to compensate Pellegrino at the minimum and overtime rates mandated by the FLSA.

67.

Pellegrino complained to Defendants (and Defendants' agents) about unlawful employment practices in violation of the FLSA.

68.

Shortly after Pellegrino complained about Defendants' failure to compensate Pellegrino at the FLSA-mandate rates, Defendants subjected Pellegrino to a hostile work environment, defamed Pellegrino's professional character, threatened retaliatory action, and then terminated Pellegrino's employment.

69.

The effect of Defendants' actions has been to suspend and deprive Pellegrino of an employment position, as well as loss income in the form of wages, prospective retirement benefits, social security, and other benefits due Pellegrino because of the exercise of Pellegrino's Federally-protected rights

70.

Defendants' adverse employment action against Pellegrino constitutes unlawful retaliation in violation of, *inter alia*, the FLSA.

71.

Defendants' retaliatory actions were willful, deliberate, and intended to cause Pellegrino harm and/or were committed with reckless and wanton disregard of the harm caused to Pellegrino in derogation of Pellegrino's Federally-protected rights.

72.

Defendants' discriminatory and retaliatory actions were undertaken in bad faith.

73.

The retaliation to which Pellegrino was subjected by Defendants entitles Pellegrino to all appropriate relief afforded under the law.

74.

As a result of Defendants' intentional and unlawful conduct, Pellegrino has suffered lost compensation and other benefits of employment, physical and emotional distress, inconvenience, humiliation, damage to reputation, other indignities, as well as past and future pecuniary losses.

75.

Defendants' actions with respect to Pellegrino have demonstrated willful misconduct, malice, fraud, wantonness, oppression, and a complete want of care and, thus, Pellegrino is entitled to an award of punitive damages to deter, punish, and penalize Defendants for and from similar future conduct.

**COUNT IV**
**BREACH OF CONTRACT**
**IN VIOLATION OF THE LAWS OF THE STATE OF GEORGIA**
**(Against Defendants 12-Bray and Howard)**

76.

Under Georgia law, a contract is an agreement between two or more parties for the doing or not doing of some specified thing and an action at law lies for breach of a contract and that damages are given as compensation for the injuries sustained.

77.

In or about January 2020, Pellegrino, 12-Bray, and Howard entered into an agreement, wherein Pellegrino agreed to provide professional butler/concierge services at the Estate to 12-Bray and Howard, who agreed to pay Pellegrino at the rate of $750.00 per week for a probationary period before paying Pellegrino $80,000.00 annually.

78.

The agreement, which is supported by good and valuable consideration, constitutes 12-Bray's and Howard's unconditional promise to pay, at the agreed upon rates, Pellegrino for professional butler/concierge services provided to Defendants.

79.

Based upon 12-Bray's and Howard's promises and the agreement, Pellegrino provided diligent and competent professional butler/concierge services to 12-Bray and Howard pursuant to the agreement while forgoing alternative employment opportunities.

80.

Pellegrino professionally and diligently performed pursuant to the terms and conditions of the agreement.

81.

Notwithstanding Pellegrino's requests and demands for compensation pursuant to the agreement, 12-Bray and Howard breached the agreement when refusing and/or failing to compensate Pellegrino for hours worked and at the agreed upon rates.

82.

As a direct and proximate result of 12-Bray's and Howard's breach of the Agreement, Pellegrino has been damaged in the amount of the unpaid compensation, interest, and litigation expenses associated with the collection of the indisputable indebtedness.

83.

Because 12-Bray and Howard have acted in bad faith, been stubbornly litigious, and/or caused Pellegrino unnecessary trouble and expense when breaching the agreement, Pellegrino is also entitled to recover the expenses of litigation associated with 12-Bray's and Howard's breach of contract.

## COUNT V
### *QUANTUM MERUIT*
### (Alternative Breach of Contract Theory)
### IN VIOLATION OF THE LAWS OF THE STATE OF GEORGIA
### (Against Defendants 12-Bray and Howard)

84.

Under Georgia law, when one renders services or transfers property valuable to another that the other accepts, a promise is implied to pay the reasonable value of the services or property.

85.

Pellegrino provided professional butler/concierge services at the Estate to 12-Bray and Howard.

86.

Defendants have failed to compensate Pellegrino at the agreed-upon and FLSA-mandated rates in exchange for Pellegrino's professional butler/concierge services at the Estate.

87.

At the time of the services, Pellegrino expected to be compensated, as promised and agreed, for professional butler/concierge services.

88.

Pellegrino professionally and diligently performed pursuant to the terms and conditions of the agreement.

89.

12-Bray and Howard knowingly permitted Pellegrino to provide the professional butler/concierge services at the agreed-upon rates at the Estate.

90.

Pellegrino's provision of professional butler/concierge services to 12-Bray and Howard without compensation would be unjust.

91.

To the extent the Court determines no agreement exists, Pellegrino is entitled to compensation in an amount to be proven at trial.

**COUNT VI**
**UNJUST ENRICHMENT**
**(Alternative Breach of Contract Theory)**
**IN VIOLATION OF THE LAWS OF THE STATE OF GEORGIA**
**(Against Defendants 12-Bray and Howard)**

92.

Under Georgia law, a party cannot induce, accept, or encourage another to furnish or render something of value to such party and avoid payment for the received value.

93.

12-Bray and Howard induced and encouraged Pellegrino to provide professional butler/concierge services to 12-Bray and Howard at the Estate.

94.

12-Bray and Howard permitted and allowed Pellegrino to provide professional butler/concierge services, which were extremely valuable to 12-Bray and Howard based upon the overwhelming needs at the Estate, to 12-Bray and Howard.

95.

12-Bray and Howard knew that Pellegrino was providing professional butler/concierge services to 12-Bray and Howard.

96.

12-Bray and Howard failed to compensate Pellegrino for professional butler/concierge services at the agreed-upon and FLSA-mandated rates.

97.

Pellegrino's provision of butler/concierge services to 12-Bray and Howard without compensation would be unjust.

98.

To the extent the Court determines no agreement exists, Pellegrino is entitled to compensation in an amount to be proven at trial.

## **COUNT VII**
## **DEFAMATION**
## **IN VIOLATION OF THE LAWS OF THE STATE OF GEORGIA**
### **(Against Defendant Howard)**

99.

Under Georgia law, imputing to another a crime punishable by law and/or making charges against another in reference to his/her trade, office, or profession, calculated to injure him/her therein, is defamation.

100.

Pellegrino provided professional butler/concierge at the Estate on behalf of 12-Bray and Howard.

101.

Although Pellegrino diligently and loyally provided butler/concierge services at the Estate, Howard has falsely accused Pellegrino of stealing a $250,000.00 engagement ring that Howard negligently left in a motor vehicle at the Estate where several individuals had unfettered access, engaging in an improper personal relationship with Howard's fiancé, Cooper, and otherwise being untrustworthy.

102.

Howard's false and fraudulent accusations, statements, and communications that Pellegrino unlawfully stole, while providing professional butler/concierge services at the Estate, the engagement ring charged Pellegrino with a potential crime, dishonestly/fraud, and immorality in Pellegrino's professional capacity.

103.

Howard's false and fraudulent accusations, statements, and communications that, while providing professional butler/concierge services at the Estate, Pellegrino stole a $250,000.00 engagement ring, engaged in an improper personal relationship with Howard's fiancé, Cooper, and otherwise being untrustworthy injured Pellegrino's professional legal trade and business.

104.

Howard's false and fraudulent accusations, statements, and communications to Pellegrino's colleagues, co-workers, and other individuals were unprivileged.

105.

Based upon Pellegrino's diligent/loyal butler/concierge service, coupled with the fact that Howard negligently left the engagement ring in a vehicle at the Estate where countless individuals had unfettered access, Howard's false accusations, statements, and communications were, at least, negligent.

106.

Because Howard's false and fraudulent accusations, statements, and communications impugned Pellegrino's professional character at the Estate and Pellegrino's workplace, Pellegrino has suffered special and unique harm.

107.

As a direct result of Howard's defamation *per se*, Pellegrino has been damaged in an amount to be proven at trial.

## COUNT VIII
## ATTORNEY'S AND LITIGATION EXPENSES
## PURSUANT TO THE LAWS OF THE STATE OF GEORGIA
### (Against Defendants 12-Bray and Howard)

108.

Under Georgia law, the expenses of litigation are allowed, where the plaintiff has specially plead and has made prayer thereof and where the defendant has acted in bad faith, has been stubbornly litigious, and/or has caused the plaintiff unnecessary trouble and expenses.

109.

Pellegrino, 12-Bray, and Howard entered into the agreement, wherein 12-Bray and Howard agreed to compensate, at agreed upon rates, Pellegrino for professional butler/concierge services.

110.

Although receiving professional legal services from Pellegrino pursuant to the agreement, 12-Bray and Howard have, in bad faith, failed and/or refused to compensate Pellegrino at the agreed-upon rates while falsely defaming Pellegrino's professional character.

111.

During and following the termination of employment pursuant to the agreement, 12-Bray and Howard have repeatedly, maliciously, and fraudulently refused and/or failed to compensate, at the agreed-upon rate, for professional butler/concierge services.

112.

Despite Pellegrino's diligent and professional provision of professional butler/concierge services pursuant to the agreement, 12-Bray and Howard have fraudulently, maliciously, and stubbornly refused, in bad faith without any cause in law or fact, to compensate Pellegrino at the agreed-upon rates, resulting in unnecessary trouble, expense, and litigation.

113.

As a result of 12-Bray's and Howard's bad faith, stubborn litigiousness, and unnecessary trouble, Pellegrino is entitled to recover the expenses of litigation associated with the above-captioned case, refusal to perform pursuant to the agreement, and defamation.

**COUNT IX**
**PUNITIVE DAMAGES**
**PURSUANT TO THE LAWS OF THE STATE OF GEORGIA**
**(Against Defendants Howard and 12-Bray)**

114.

In tort actions, there may be aggravating circumstances that may warrant the awarding or imposing of additional damages called punitive damages.

115.

Defendants have defamed Pellegrino and engaged in the other intentional wrongful acts, as described and alleged herein.

116.

Defendants' defamation and the other intentional wrongful acts, as described and alleged herein, showed willful misconduct, malice, fraud, wantonness, oppression, and an entire want of care rising to the level of the conscious indifference and disregard for any consequences.

117.

When seeking to retaliate and punish Pellegrino, Defendants defamed and impugned Pellegrino's professional character, as well as engaged in the other wrongful conduct, as described herein.

118.

Punitive damages are required to punish, penalize, and deter Defendants from engaging in future willful misconduct, malice, fraud, wantonness, and oppression.

119.

Pellegrino is entitled, pursuant to O.C.G.A. § 51-12-5.1, to an award of punitive damages in the amount of $250,000.00.

## **PRAYERS FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully demand a trial by jury and request the following relief:

(a)   That the Clerk of the Court issue summons and original process, served upon Defendants and any other person or entity the Court deems necessary in accordance with the law;

(b)   That the Court grant declaratory judgment that Plaintiff's rights under, among other laws, the FLSA were violated;

(c)     That the Court award Plaintiff compensatory damages for all injuries suffered as a result of Defendants' unlawful conduct;

(d)     That the Court award back pay, including, but not limited to, unpaid back wages, lost income, bonuses, incentive compensation, pension, social security, and other benefits in amounts to be shown at trial;

(e)     That the Court award liquidated damages equal to back pay and lost benefits based upon Defendants' willful violations of the FLSA;

(f)     That the Court award attorney's fees and litigation expenses (pursuant to Georgia law and the FLSA) associated with the above-captioned case;

(g)     That the Court award punitive damages in an amount reasonable and commensurate with the harm done and calculated to be sufficient to deter such future conduct;

(h)     That the Court award pre-judgment interest on any monetary award;

(i)     That the Court grant a trial by jury as to all triable issues of fact; and

(j)     Further and additional relief as may be just and appropriate.

*[SIGNATURE ON THE FOLLOWING PAGE]*

Respectfully submitted, this 30th day of March, 2022.

MOLDEN & ASSOCIATES

*/s/ Regina S. Molden*

REGINA S. MOLDEN
Georgia Bar No. 515454
T. ORLANDO PEARSON
Georgia Bar No. 180406
Peachtree Center – Harris Tower, Suite 1245
233 Peachtree Street, NE
Atlanta, Georgia 30303
(404) 324-4500
(404) 324-4501 (facsimile)
Email:  rmolden@moldenlaw.com
Email:  topearson@moldenlaw.com

*Counsel for Plaintiff Louis Gregory Pellegrino*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| LOUIS GREGORY PELLEGRINO, | |
| Plaintiff, | |
| vs. | CIV. ACTION NO._____ |
| 12-BRAY, LLC, and DWIGHT DAVID HOWARD, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## LOCAL RULE AND SERVICE CERTIFICATION

The undersigned counsel certifies that this document has been prepared in accordance with the Local Rules and that the foregoing Complaint for Damages has been filed with the Clerk using the CM/ECF system which will notify the attorney(s) of record.

Respectfully submitted, this 30th day of March, 2022.

MOLDEN & ASSOCIATES

T. ORLANDO PEARSON
Georgia Bar No. 180406